NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0080-20

ROBERT FUHRMAN,
MATTHEW LINDENBERG,
CONSTANCE LOSCALZO,
DEBORAH STEINBAUM,
and SIOBHAN CRANN
WINOGRAD,

      Plaintiff-Respondents,

v.

HEATHER MAILANDER, IN
HER OFFICIAL CAPACITY
AS THE VILLAGE CLERK FOR
THE VILLAGE OF RIDGEWOOD,

      Defendant-Appellant,

and

THE COUNTY CLERK FOR
BERGEN COUNTY,

      Defendant.

_____

APPROVED FOR PUBLICATION

March 9, 2020

APPELLATE DIVISION

Argued February 10, 2021 – Decided March 9, 2021

Before Judges Alvarez, Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey,
Law Division, Bergen County, Docket No. L-4906-20.

William W. Northgrave argued the cause for appellant (Matthew S. Rogers and McManimon, Scotland & Bauman, LLC, attorneys; Matthew S. Rogers and William W. Northgrave, on the briefs).

Scott D. Salmon argued the cause for respondents (Jardim, Meisner & Susser, PC, attorney; Scott D. Salmon, on the brief).

The opinion of the court was delivered by

GEIGER, J.A.D.

In this accelerated appeal arising from a municipal clerk's rejection of an initiative petition to move the school board and municipal elections to the date of the November general election, we address whether the municipal clerk violated the Faulkner Act, N.J.S.A. 40:69A-184 to -192, by repeatedly refusing to certify and file the initiative petition due to perceived minor technical noncompliance. We also address whether the clerk's actions violated the right of initiative petition guaranteed by the Faulkner Act, thereby depriving the petitioners of a substantive right protected by N.J.S.A. 10:6-2(c) of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2.

Defendant Heather Mailander,[1] in her official capacity as municipal clerk of the Village of Ridgewood, appeals from a September 2, 2020 Law

---

[1] References to defendant are to Heather Mailander only. We refer to defendant Bergen County Clerk (the County Clerk), who did not take a position in the trial court and did not participate in this appeal, by title.

A-0080-20

Division order entering final judgment in favor of plaintiffs Robert Fuhrman, Matthew Lindenberg, Constance Loscalzo, Deborah Steinbaum, and Siobhan Crann Winograd. The court ordered defendant to certify the initiative petition and place plaintiffs' requested question on the ballot. The court also found that defendant deprived plaintiffs of their right to substantive due process and their statutory right of initiative in violation of N.J.S.A. 10:6-2(c) and awarded attorney's fees and costs to plaintiffs pursuant to N.J.S.A. 10:6-2(f). For the following reasons, we affirm.

I.

We discern the following largely undisputed facts from the record. Ridgewood is governed by the Optional Municipal Charter Law, N.J.S.A. 40:69A-1 to -210, commonly known as the Faulkner Act.

Plaintiffs were residents and registered voters in Ridgewood. They were members of a "committee of petitioners" that sought to change the dates of the elections for the Ridgewood Board of Education (BOE) and the Ridgewood village council (Council) to coincide with the general elections in November, in order to limit taxpayer expenditures. Only thirteen of the 584 operating

public school districts in the State still hold April school board elections, including Ridgewood.[2]

In February 2020, petitioners began speaking with Ridgewood officials about this initiative. On May 29, 2020, defendant told plaintiffs that to certify their petition to place the question on the ballot, they needed to obtain between 410 and 614 signatures of registered Ridgewood voters. On June 5, 2020, Lindenberg emailed defendant and Ridgewood's municipal solicitor asking for clarification of the exact number of signatures required.

Lindenberg requested that defendant confirm his understanding that plaintiffs needed at least 410 signatures but no more than 615, because a larger number of signatures would trigger a special election. On June 19, 2020, defendant responded: "Neither I nor [the municipal solicitor] are able to provide you with legal information regarding the petitions. If you are concerned about the petitions with the wrong number, you may either seek legal counsel for advice or submit them as is." That same day, the municipal solicitor responded by email that it was a conflict of interest for him to answer

---

[2] See Fourteen Districts Hold Elections, NEW JERSEY SCH. BDS. ASSOC., May 12, 2020, https://www.njsba.org/news-publications/school-board-notes/may-12-2020-vol-xliiino-40/fourteen-districts-hold-elections/. Garfield subsequently moved its school district election to November. Katie Sobko, Garfield to move school district elections to November, NorthJersey.com (June 14, 2020), https://northjersey.com/story/news/bergen/garfield/2020/06/14/garfield-nj-move-school-district-elections-november/3177881001/.

Lindenberg's question because it requested legal advice, and he represented Ridgewood's Council. In a subsequent June 26, 2020 email, Ridgewood's municipal solicitor explained that defendant's statement that the number of signatures needed was between 410 and 615, "is subject to interpretation . . . and you are free to accept it or disregard it."

On July 6, 2020, plaintiffs submitted an initiative and referendum petition (the initial petition) to defendant pursuant to N.J.S.A. 40:69A-186. The full text of the proposed ordinance read: "Shall the Village of Ridgewood, NJ change the date of its Board of Education elections, normally held annually in April, and its municipal (Village Council) elections, normally held bi-annually in May, to the date of the General Election in November?"

On July 24, 2020, defendant emailed Lindenberg notifying him that the petition had been reviewed and was deemed insufficient. Defendant explained, "[a]lthough you have sufficient signatures for the [i]nitiative [p]etition, it fails to conform to [N.J.S.A.] 40:69A-186 in that the petition was not filed in the proper legal form for an [i]nitiative [p]etition, pertaining to the question asked and the statement made on the petition." Defendant directed plaintiffs to file a supplementary petition within ten days. Lindenberg immediately responded requesting defendant to provide "specific details" of how the initial petition

was defective "in order to satisfy the requirements." In response, defendant sent an August 5, 2020 certification of review which stated, in part:

> The [p]etition form is deficient because it does not provide the [o]rdinances that are begin sought for consideration. There are two distinct [o]rdinances proposed by the [p]etitioners in this process that must be written in full and placed before the voter who signs the petition. The [p]etitioners did not provide the [o]rdinances for the voter to review on the [p]etition before signing.

Defendant also expressed her opinion that the initial petition was circulated not in person, but through a website, and thereby not controlled by the circulators, making it impossible to authenticate the signatures. Plaintiffs attempted to cure the deficiencies by putting the full text of the proposed ordinance on the face of the petition and by circulating it to individuals instead of using a website.

On August 13, 2020, plaintiffs submitted a supplementary initiative petition (the petition). Five days later, defendant informed plaintiffs that the petition was deficient, and that she would explain the deficiencies after the Council meeting scheduled for September 2, 2020.

Plaintiffs asked the County Clerk when the mail-in ballots for the November election would be printed. On August 20, 2020, the County Clerk responded that the last day to make changes to Ridgewood's ballots was

August 31, 2020, because printing of the ballots would commence immediately thereafter.

On August 24, 2020, plaintiffs filed a verified complaint in lieu of prerogative writs.  Plaintiffs sought a writ of mandamus ordering defendant to process their petition and place their question on the ballot, and a ruling that defendant, by failing to certify their petition, had denied their statutory right of initiative, violating N.J.S.A. 10:6-2(c).  Plaintiffs also sought an award of attorney's fees pursuant to N.J.S.A. 10:6-2(f).

The complaint noted that "[o]n April 29, 2020, Governor Phil Murphy signed Executive Order 132, which allowed for the electronic collection of petition signatures through a template to be created by the State."  The resulting template form contained a blank space for insertion of the number of signatures required for the proposed ordinance to be placed on the ballot.  The template form states that the "[n]umber of signatures required is available from your local County Clerk or Municipal Clerk."  It further instructs:  "Municipal Initiative and Referendum petitions shall be filed with the Municipal Clerk. Please contact the filing officer for any questions you may have."

Plaintiffs alleged that defendant violated her duty under N.J.S.A. 40:69A-188 to notify plaintiffs "immediately of her findings" regarding the revised petition and was not permitted to "wait until the next meeting of the

A-0080-20

Village Council." They further alleged that "[d]efendant has continually acted in a partisan manner, inserting both her personal opinions and that of Village Council, into the process in an effort to delay and obstruct [plaintiffs'] right to submit a public question."

The trial court issued an order to show cause returnable August 27, 2020, noting the extremely time-sensitive nature of the matter and the need for immediate resolution. Defendant filed an answer. The court heard oral argument on August 27, 2020, and reserved judgment. In the meantime, the court entered an August 28, 2020 order that directed the County Clerk not to submit the Ridgewood ballot for printing before September 3, 2020.

On September 2, 2020, the court issued an order and accompanying twenty-seven-page written decision. The order: (1) declared that defendant "violated N.J.S.A. 40:69-184 to -190 by improperly and unlawfully rejecting [plaintiffs'] Initiative Petition"; (2) directed defendant "to certify [plaintiffs'] Initiative Petition that was filed on August 13, 2020 as sufficient and cause it to be placed on the November 3, 2020 ballot"; (3) directed defendant and the Clerk of Bergen County "to duly process the certified [p]etition, as is required by statute, and cause it to be placed on the November 3, 2020 ballot"; (4) vacated "the August 28, 2020 [o]rder that restricted the printing of the Ridgewood ballot" and directed that the ballot "shall include the question to

the voters as raised in the August 13, 2020 [p]etition"; (5) declared that defendant's "rejection of the August 13, 2020 Initiative Petition constituted a violation of [plaintiffs'] right to substantive due process as well as [their] statutory right of initiative, in violation of N.J.S.A. 10:6-2(c)"; and (6) awarded plaintiffs reasonable attorney's fees and costs in an amount to be determined.

The court explained its ruling that defendant improperly rejected plaintiffs' petition submitted on August 13, 2020. The initial petition, submitted on July 6, 2020, made clear that plaintiffs sought to move both the BOE and the municipal elections; even though defendant rejected that petition, she stated that plaintiffs had a sufficient number of signatures to accomplish their goal. The court found defendant "punted" her ministerial obligation to notify plaintiffs of the reasons for her rejection of the August 13, 2020 petition and she was not permitted by statute to defer to Village Council in this regard. Furthermore, deferring the decision until after the September 2, 2020 Council meeting would have denied plaintiffs the opportunity to have their question placed on the ballot, which was scheduled to be printed on August 31, 2020. The court noted defendant's arguments that two questions were necessary because plaintiffs sought to move the date of two elections and that voters

"might be [unaware] of the loss of the ability to vote on the school budget if the school [board] election was moved."

This appeal followed. The trial court denied defendant's motion to stay the order. We granted defendant's motion to accelerate the appeal.

On October 1, 2020, plaintiffs submitted their application for an award of attorney's fees in the amount of $10,837.50 and costs of $420. Defendant did not challenge the application. On October 21, 2020, the court issued an order and accompanying written decision awarding the full amount sought by plaintiffs.

Plaintiffs' question appeared on the November ballot as follows: "Shall the ordinance submitted by initiative petition providing for the establishment of the date for Ridgewood [BOE] elections and for [Village Council] [e]lections as the first Tuesday after the first Monday in November (The General Election day) be adopted?" According to plaintiffs, Ridgewood voters passed the public question by a margin of 58.78% in favor and 41.21% against.

Defendant raises the following points for our consideration:

POINT ONE

VOTERS IN NEW JERSEY ARE GRANTED A RIGHT TO CHOOSE IN ELECTIONS, ESPECIALLY WHERE THE QUESTION IS WHEN TO HOLD ELECTIONS.

POINT TWO

10

THE TRIAL COURT ERRED IN ORDERING THE PROPOSED ORDINANCE PERMITTING THE REMOVAL OF THE RIDGEWOOD SCHOOL[] BOARD ELECTIONS FROM APRIL TO NOVEMBER TO BE INCLUDED ON THE NOVEMBER 3, 2020 BALLOT.

A. The Proposed Ordinance Permitting the [Move]of The Ridgewood School Board Elections from April to November Did Not Follow the Procedures Required by N.J.S.A. 19:60-1.1.

B. Moving School Board Elections From April to November Increases the Likelihood of Partisan Local Government Intermingling with School Board Affairs, and Removes a Citizen's Right to Vote on the School Budget.

POINT THREE

THE VILLAGE CLERK'S DUTY TO ADVISE RESPONDENTS AS TO THE SUFFICIENCY OF THEIR PETITION IS CIRCUMSCRIBED BY LAW.

II.

Defendant argues that the court erred by ordering her to place on the ballot a single question addressing both the BOE and the municipal elections, because, instead, two questions were required. We are unpersuaded.

As we explained almost five decades ago:

> The Faulkner Act was adopted in order to encourage public participation in municipal affairs in the face of normal apathy and lethargy in such matters. The act gave municipalities the option of choosing one form or another of local government best

11

suited to its needs. It was a legislative demonstration of the democratic ideal of giving the people the right of choosing the form of government they preferred and the opportunity to exercise the powers under that form to the furthest limits. Some [seventy-six] of the 567 municipalities of this State have adopted one form or another of the forms of government authorized under the Faulkner Act.

The initiative and referendum processes authorized by the act comprise two useful instruments of plebiscite power and provide a means of arousing public interest. Ordinary rules of construction would, of course, dictate that such provisions should be liberally construed

[Twp. of Sparta v. Spillane, 125 N.J. Super. 519, 523 (App. Div. 1973).]

"[V]oters in a Faulkner Act municipality have the right of initiative to 'propose any ordinance' and then 'adopt or reject the same at the polls.'" City of Ocean City v. Somerville, 403 N.J. Super. 345, 351 (App. Div. 2008) (quoting N.J.S.A. 40:69A-184).

The voters of any municipality may propose any ordinance and may adopt or reject the same at the polls, such power being known as the initiative. Any initiated ordinance may be submitted to the municipal council by a petition signed by a number of the legal voters of the municipality equal in number to at least 15% of the total votes cast in the municipality at the last election at which members of the General Assembly were elected. An initiated ordinance may be submitted to the municipal council by a number of the legal voters of the municipality equal in number to at least 10% but less than 15% of the total votes cast in the municipality at the last election at which

members of the General Assembly were elected, subject to the restrictions set forth in [N.J.S.A. 40:69A-192].

[N.J.S.A. 40:69A-184.]

N.J.S.A. 40:69A-186 sets forth the requirements for submitting a petition for certification. All papers shall be uniform in size and style, petition papers shall contain the full text of the proposed ordinance, each signer shall indicate his or her place of residence, the names and addresses of the committee of petitioners shall be attached to each petition, and each petition paper shall include an affidavit of the circulator that he or she personally circulated the paper and verified the signatures. N.J.S.A. 40:69A-186.

Any five registered voters can organize themselves as a committee of petitioners, who shall be responsible for the circulation and filing of the petition. N.J.S.A. 40:69A-186. The circulated and signed petition is then filed with the municipal clerk, who has twenty days to examine the petition to determine whether "each paper of the petition has a proper statement of the circulator and whether the petition is signed by a sufficient number of qualified voters." N.J.S.A. 40:69A-187.

Before the events relevant to this action occurred, the formal petition requirements imposed by N.J.S.A. 40:69A-186 were significantly altered by Executive Order 132, effective April 29, 2020, in response to the COVID-19

emergency. Exec. Order No. 132 (Apr. 29, 2020), 52 N.J.R. 1100(c) (Apr. 29, 2020). The preamble of the Executive Order set forth the pandemic-related need for relaxing petition requirements by allowing voters to electronically fill out and submit initiative petitions:

> WHEREAS, social distancing measures are required for a period of as-yet-undetermined duration, meaning unnecessary person-to-person contact must be limited; and

> WHEREAS, New Jersey citizens are presently faced with the reality that exercising their statutory right to engage in direct democracy through collecting or filling out petitions may endanger their health and safety; and

> WHEREAS, unless action is taken, the COVID-19 emergency will significantly hinder initiatives and referenda from meeting the petition requirements set forth in statutes, including but not limited to N.J.S.A. 40:69A-184, 40:69A-185, 40:69A-186 . . .; and

> WHEREAS, the full participation of voters is critical to a robust democracy; and

> WHEREAS, allowing initiative and referendum campaigns to submit their petitions electronically, in addition to hand delivery, will help limit unnecessary person-to-person contact; and

> WHEREAS, allowing voters to fill out and submit initiative and referendum petitions electronically, so that initiative or referendum campaigns need not physically gather petitions by going to individual voters in person, will help limit unnecessary person-to-person contact; and

14

WHEREAS, temporarily modifying the requirements of statutory provisions, including but not limited to N.J.S.A. 40:69A-186, . . . to allow for electronic submission of petitions is needed to ensure voters can safely exercise their democratic rights during this unprecedented public health crisis[.]

The Executive Order ordered and directed county clerks and municipal clerks as follows:

1. In addition to accepting hand delivery of initiative and referendum petitions, county clerks and municipal clerks shall allow for these petitions to be submitted electronically.

2. The county clerks and municipal clerks shall also accept petitions with signatures collected via an online form. A generic template of this form shall be created by the Secretary of State, in consultation with the Department of Law and Public Safety. This form shall be available for use by May 1, 2020.

3. Following the availability of the online template form, the county clerks and municipal clerks shall require that signatures be gathered via the online template form. Hand signatures obtained prior to the effective date of this Order shall also be accepted.

4. The requirements of statutory provisions, including but not limited to N.J.S.A. 40:69A-186, . . . that a petition circulator provide a notarized affidavit attesting to the validity of the signatures on the petition and the process by which the signatures were collected shall be suspended for initiative and referendum petitions submitted during the pendency of the public health emergency. Petition circulators who have not already notarized an affidavit shall attach a signed statement verifying the information required in

15

A-0080-20

statutes, including but not limited to N.J.S.A. 40:69A-186 . . . .

Defendant initially rejected the initiative petition because the petition was not personally circulated to each voter who signed it. The petition should not have been rejected on that basis. The electronic circulation and submission of the petition, rather than by hand delivery, was expressly permitted and encouraged by Executive Order 132.

The initiative petition "shall be filed with the municipal clerk." N.J.S.A. 40:69A-185. "Nothing in the statute suggests that the [municipal] clerk can refuse to accept the petition for filing." Tumpson v. Farina, 218 N.J. 450, 469 (2014).

For the petition to be certified, the municipal clerk must:

> determine "whether the petition is signed by a sufficient number of qualified voters" and [] certify whether the same is sufficient or insufficient. N.J.S.A. 40:69A-187. There is no statutory directive as to the method or means to be utilized by the clerk in order to arrive at his [or her] determination.
>
> In the absence of such statutory direction, a clerk has the discretionary power to adopt any rational means of performing his [or her] duty, subject to judicial review to determine whether he [or she] has abused his [or her] discretion and acted in an arbitrary manner.
>
> [D'Ascensio v. Benjamin, 142 N.J. Super. 52, 55 (App. Div. 1976).]

16

Thus, the clerk is charged with making two determinations: (1) the actual number of votes cast in the last General Assembly election, and (2) that only legal voters placed their signatures on the petition. Tumpson, 218 N.J. at 470.

The voters have the power of referendum, to approve or reject at the polls any ordinance submitted by the Council to the voters. N.J.S.A. 40:69A-185. To that end:

> All petition papers comprising an initiative or referendum petition shall be assembled and filed with the municipal clerk as one instrument. Within twenty days after a petition is filed, the municipal clerk shall determine whether each paper of the petition has a proper statement of the circulator and whether the petition is signed by a sufficient number of qualified voters. After completing his [or her] examination of the petition, the municipal clerk shall certify the result thereof to the council at its next regular meeting. If he [or she] shall certify that the petition is insufficient he [or she] shall set forth in his [or her] certificate the particulars in which it is defective and shall at once notify at least two members of the Committee of the Petitioners of his [or her] findings.
>
> [N.J.S.A. 40:69A-187.]

The Legislature has enacted a specific process to move the date of a BOE election to the date of the general election.

> The question of moving the date of a school district's annual school election to the first Tuesday after the first Monday in November, to be held simultaneously with the general election, shall be submitted to the legal voters of a local or regional school district, other than a Type II district with a board of school estimate,

whenever a petition signed by not less than 15% of the number of legally qualified voters who voted in the district at the last preceding general election held for the election of electors for President and Vice-President of the United States is filed with the board of education.

[N.J.S.A. 19:60-1.1(a)(1).]

Defendant argues that the statutory process required to move a BOE election, as set forth in N.J.S.A. 19:60-1.1, differs from that used to move a municipal election, described in N.J.S.A. 40:69A-184 to -186.  She contends that the court erred because voters should have been offered two separate questions regarding moving the BOE and the municipal elections and should not have been required to make a single choice about both elections.  According to defendant, the court disenfranchised voters because they were not given the opportunity to move one election, but not the other.  In support, defendant cites N.J. Democratic Party v. Samson, 175 N.J. 178, 190 (2002), for the notion that voters should not be limited in their ability to exercise their franchise.  As our Supreme Court explained:

> When this Court has before it a case concerning the New Jersey election laws, we are directed by principle and precedent to construe those laws so as to preserve the paramount right of the voters to exercise the franchise. We have understood our Legislature, in establishing the mechanisms by which elections are conducted in this State, to intend that the law will be interpreted "to allow the greatest scope for public participation in the electoral process, to allow

18

candidates to get on the ballot, to allow parties to put their candidates on the ballot, and most importantly to allow the voters a choice on Election Day."

[Ibid. (quoting Catania v. Haberle, 123 N.J. 438, 448 (1990)).]

Defendant also relies upon In re Hackensack Recall Election, 31 N.J. 592, 595 (1960), where our Supreme Court stated:

in the absence of malconduct or fraud, we cannot overturn a concluded election for an irregularity in the ballot unless in all human likelihood the irregularity has interfered with the full and free expression of the popular will, and has thus influenced the result of the election.

Defendant argues that placing only one question on the ballot, instead of two, interfered with the full and free expression of the popular will. Plaintiffs contend that overturning the trial court's decision would disenfranchise 7582 voters, representing nearly sixty percent of the electorate, who chose to adopt the initiative.

Ridgewood voters were given a choice whether to consolidate the BOE and Council elections to save taxpayer dollars. They were free to vote against the initiative. There was no statutory requirement that two separate questions had to be placed on the ballot. Also, when performing her ministerial duty of determining whether the petition should be certified, defendant never told plaintiffs they needed to present two questions on the ballot instead of one.

19

"The Faulkner Act was adopted in order to encourage public participation in municipal affairs in the face of normal apathy and lethargy in such matters." Spillane, 125 N.J. Super. at 523. In Faulkner Act municipalities there is a "strong public policy favoring the right of the voters to exercise their power of initiative." In re Jackson Twp. Admin. Code, 437 N.J. Super. 203, 215 (App. Div. 2014) (quoting Clean Cap. Cnty. Comm. v. Driver, 228 N.J. Super. 506, 510 (App. Div. 1988)). Thus, "statutory provisions for initiative as to municipal ordinances are generally to be liberally construed to effect the salutary objective of popular participation in local government." Concerned Citizens of Wildwood Crest v. Pantalone, 185 N.J. Super. 37, 43 (App. Div. 1982) (citing In re Certain Petitions for a Binding Referendum, 154 N.J. Super. 482, 484 (App. Div. 1977)).

Our courts have long upheld the expression of the popular will even when there was not full compliance with statutory details. In d'Espard v. Essex Fells, 84 N.J.L. 181, 182-83 (Sup. Ct. 1913), the Court explained:

> when the fact clearly appears that a statutory provision
> is entirely directory in character; that the essential
> purpose of the law has been answered; that no claim is
> made that any substantial fraction of the electors have
> been misled, and that to all intents and purposes the
> legislative scheme has been complied with by a
> substantial expression of the popular will, the mere
> failure of punctilious compliance by a local
> administrative official, entrusted with the performance
> of statutory details of the Election law, will be held

20

not to subvert the popular will thus practically expressed.

More recently, we have explained:

> The law in this State . . . is well established on the point that initiative and referendum statutes should be liberally construed in order to encourage public participation in municipal affairs in the face of normal apathy and lethargy in such matters.
>
> [Margate Tavern Owners' Ass'n v. Brown, 144 N.J. Super. 435, 441 (App. Div. 1976) (citing Spillane, 125 N.J. Super. at 523).]

Applying this standard, we conclude that the use of a single question on the ballot did not disenfranchise voters, who were clearly informed that voting in favor of the election date change would affect both the BOE election and the Council election. We discern no intentional misconduct or fraud by plaintiffs. Nor has defendant demonstrated that any "irregularity in the ballot . . . has interfered with the full and free expression of the popular will, and has thus influenced the result of the election." Hackensack Recall Election, 31 N.J. at 595. A technical ballot error should not override the clear choice of the electorate to save taxpayer dollars and increase voter participation by holding both elections on the date of the November general election. We are satisfied that the result of the election was not affected by using a single question. "Therefore, the expressed will of the [Ridgewood] electorate will not be disturbed." Ibid.

III.

A.

Defendant further argues that the court erred because plaintiffs did not follow the proper procedures for moving a BOE election. N.J.S.A. 19:60-1.1(a) requires that the petition be signed by fifteen percent of voters who voted in the last presidential election. Some 13,090 Ridgefield residents voted in the 2016 presidential election; accordingly, defendant argues 1965 signatures were required on the petition. Plaintiffs supplied only 582 signatures Defendant concedes this number was sufficient for a petition to move the municipal election, but not to move a BOE election.[3]

The trial court acknowledged that plaintiffs did not follow the appropriate procedure for moving the date of the BOE election. It also recognized defendant's concern that voters may not have realized that by moving the school board election to the date of the November general election, they could no longer vote on the school budget. The court determined, however, that defendant improperly denied the petition because plaintiffs made

---

[3] To move the municipal election without triggering a special election, plaintiffs needed signatures of at least ten percent and not more than fifteen percent of the number of Ridgewood voters who voted in the last General Assembly election; according to defendant, 4098 Ridgewood residents voted in the 2019 General Assembly election. Ten percent of that number is 410, while fifteen percent is 615.

A-0080-20

clear that their goal was to move the BOE election and defendant told them they had enough signatures to accomplish this.

"A ministerial duty is one that 'is absolutely certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion.'" Vas v. Roberts, 418 N.J. Super. 509, 522 (App. Div. 2011) (quoting Ivy Hill Park Apartments v. N.J. Prop. Liab. Ins. Guar. Ass'n, 221 N.J. Super. 131, 140 (App. Div. 1987)). Defendant's ministerial duty under N.J.S.A. 40:69A-187 was to determine whether the petition was "signed by a sufficient number of qualified voters."

When plaintiffs submitted their initial petition, it was clear they sought to place on the ballot a question of whether to move the BOE election. Defendant responded to that petition by stating "[a]lthough you have sufficient signatures for the initiative petition, it fails to conform to N.J.S.A. 40:69A-186 in that the petition was not filed in the proper legal form for an Initiative Petition, pertaining to the question asked and the statement made on the petition." Until the filing of the complaint, defendant never advised plaintiffs they had an insufficient number of signatures to move a BOE election. By the time the complaint was filed, it was too late to rectify the defect. As a result,

the court ruled that defendant could not belatedly claim the number of signatures was insufficient to move a BOE election, because defendant had performed her ministerial duty and told plaintiffs they had sufficient signatures.

Plaintiffs did not actually obtain the correct number of signatures for moving a BOE election, but this was because defendant incorrectly advised them, while knowing they sought to move the BOE election. It was defendant's ministerial duty to correctly advise whether the petition had sufficient signatures, but she did not advise them they needed more signatures until it was too late for them to rectify the shortfall.

Plaintiffs argue that at this juncture, when the initiative has already passed by a wide margin, it would be improper for this court to overturn the voters' mandate because the number of signatures on the petition was insufficient. We agree. The full and free expression of the popular will was to adopt the initiative and consolidate the elections.

### B.

Next, defendant claims the court erred because plaintiffs failed to file the petition with the BOE as required by N.J.S.A. 19:60-1.1. In February 2020, when plaintiffs first approached Ridgewood's administration about the initiative, defendant told them to submit the petition to her and not the BOE.

A-0080-20

As the judge noted, multiple signatories to the petition were present or past members of the BOE, and they did not advise plaintiffs to file the petition with the BOE. In turn, when defendant advised plaintiffs of the deficiencies in the initial petition, she never stated it should be submitted to the BOE.

Plaintiffs argue that N.J.S.A. 19:60-1.1 requires a petition to be submitted to the BOE and not the municipal clerk because many communities have a BOE that is regional and not tied to single municipality. For that reason, it would be unfair for a single municipal clerk to accept a petition when multiple municipalities would be affected by moving the BOE election. But here, plaintiffs argue, Ridgewood's school district only encompasses the Village, and does not include additional municipalities. Thus, there was no lack of fairness in submitting the petition to defendant and not the BOE. We concur.

The absence of unfairness coupled with defendant's directive to file the petition with her office, rather than the BOE, militates strongly against overturning the election result. "[I]nitiative and referendum statutes should be liberally construed[.]" Margate Tavern, 144 N.J. Super. at 441. "[T]he mere failure of punctilious compliance" with "statutory details" should not "subvert the popular will." Ibid. (quoting d'Espard, 84 N.J.L. at 183). Because

plaintiffs followed defendant's directive and no demonstrated prejudice resulted, we decline to hold the election result invalid.

C.

Defendant further argues that Ridgewood voters will no longer be able to vote on the BOE budget if the school board election is moved to November Defendant argues that this is critical because the BOE budget represents sixty-seven percent of village taxes and voters might not have realized they would no longer vote on the school budget.

Defendant is only partially correct. N.J.S.A. 18A:7F-38(a) provides that a school district budget adopted pursuant to N.J.S.A. 18A:7F-5 and -6 may not increase the tax levy by more than two percent (the two percent cap). Nevertheless, pursuant to N.J.S.A. 18A:7F-5(d)(9), "[a]ny district may submit at the annual school budget election, . . . a separate proposal or proposals for additional funds, . . . to the voters, who may, by voter approval, authorize the raising of an additional general fund tax levy for such purposes." N.J.S.A. 18A:22-33(a) provides that a BOE of a type II district shall submit a vote on the school budget at the April school election. In school districts that hold their annual BOE election in November, voters may not vote on the school budget, but may vote upon whether to approve spending of the "additional funds" exceeding the two percent cap. N.J.S.A. 18A:22-33(b). Thus, when a

A-0080-20

municipality moves the BOE election to November, voters no longer approve the general budget, but may vote on the expenditure of additional amounts that exceed the two percent cap. See N.J.S.A. 19:60-1.1(a)(2) ("A vote shall not be required on the district's general fund tax levy for the budget year, other than the general fund tax levy required to support a proposal for additional funds.").

Defendant's arguments go far afield of her ministerial role as municipal clerk. Her role is not to take sides on the public policy implications of initiative petitions. Instead, her sole ministerial duty in processing plaintiffs' petition was to certify "whether each paper of the petition has a proper statement of the circulator and whether the petition is signed by a sufficient number of qualified voters." N.J.S.A. 40:69A-187. Defendant's perception of the advantages or disadvantages of moving the BOE election are not relevant to performing those duties.

In addition, plaintiffs argue that if defendant believed they had violated N.J.S.A. 19:60-1.1, she had an obligation to so inform them when she rejected their petition on August 5, 2020. We agree. At that point, plaintiffs would still have had sufficient time to gather the necessary signatures. By not informing plaintiffs until much later, and refusing to accept the initiative petition, defendant essentially created a dead end for plaintiffs until they

27

prevailed in this case. See Harz v. Borough of Spring Lake, 234 N.J. 317, 334 (2018) (citing Tumpson, 218 N.J. at 486).

D.

Defendant argues for the first time on appeal that moving the school board election to November increases the likelihood of "partisan local government intermingling with school board affairs." She also argues that moving the BOE elections will needlessly intertwine them with partisan politics and, in support, cites Botkin v. Mayor & Borough Council of Borough of Westwood, 52 N.J. Super. 416, 425 (App. Div. 1958), for the proposition that BOE elections are intended to be distinctly non-partisan.

"[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court . . . 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)); see also Correa v. Grossi, 458 N.J. Super. 571, 576 n.2 (App. Div. 2019) (declining to address arguments that were not raised in the trial court). Here, the issues do not concern jurisdiction or matters of great public concern.

For the sake of completeness, we briefly address defendant's argument. The Legislature established a process to move school board elections to the

28

date of the general election. N.J.S.A. 19:60-1.1(a)(1). The statute reflects the public policy of this State to encourage consolidation of municipal elections with the general elections. See N.J.S.A. 40:45-1; Governor's Conditional Veto Statement to S. 1328 (July 30, 2012) ("Hundreds of New Jersey's school Districts have already taken advantage of that new law, advancing my goals of saving taxpayer dollars and increasing voter participation in annual school board elections."). The overwhelming majority of municipalities have now followed this policy—only thirteen of the 584 school districts in this State still hold school board elections in April. See supra note 2.

More fundamentally, defendant's argument of increased intermingling with partisan local politics is entirely speculative and ignores the nonpartisan nature of municipal elections in Faulkner Act municipalities. See N.J.S.A. 40:69A-150 ("Regular municipal elections shall be conducted pursuant to the 'Uniform Nonpartisan Elections Law,' [N.J.S.A. 40:45-5 to -21]."). To that end, the designation of candidates on the ballot in Faulkner Act municipalities "shall not indicate political party affiliation." N.J.S.A. 40:45-10.

IV.

Defendant next argues that the court erred by ruling that she failed to properly advise plaintiffs because her duty to advise them was circumscribed by law. We discern no error.

29

A-0080-20

The court found that in August 2020, defendant violated the NJCRA by denying plaintiffs their statutory right to initiative without giving them a basis for the denial or an opportunity to rectify the situation. The court cited Harz, 234 N.J. at 334, for the notion that a municipal clerk's improper denial of a party's statutory right to referendum is a violation of the NJCRA. N.J.S.A. 10:6-2(c) provides:

> Any person who has been deprived of any substantive due process . . . rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

Our Supreme Court has utilized a test developed by the United States Supreme Court in Blessing v. Freestone, 520 U.S. 329, 340-41 (1997), to determine whether a denial by a municipal clerk of referendum rights afforded by the Faulkner Act is a violation of NJCRA. Tumpson, 218 N.J. at 476. The test considers whether the referendum statutes were intended to confer a benefit on plaintiffs; whether the statutory right is vague or amorphous; and whether the Faulkner Act imposes a binding obligation on the municipality. Id. at 477. The Court found that referendum rights meet the three-part test and

30

are substantive, not procedural.  Id. at 478.  Thus, the Court concluded that a denial of referendum rights violates NJCRA and warrants an award of attorney's fees.  Id. at 479.

"Moreover, because the Clerk's failure to file the petition gave rise to a cause of action, [the Tumpson Court] determined that 'by definition, the right of referendum is substantive in nature.'"  Harz, 234 N.J. at 334 (quoting Tumpson, 218 N.J. at 478).  This analysis applies with equal force to initiative petitions.  The Faulkner Act conferred the right of initiative petition on the plaintiffs and voters of Ridgewood.  Just as in Tumpson, "the filing of the petition was inextricably intertwined with the vindication of the plaintiffs' right of [initiative petition]."  Harz, 234 N.J. at 334 (citing Tumpson, 218 N.J. at 468-71).  As in Tumpson, "[g]iven that [defendant] had barred plaintiffs' efforts to realize that substantive right, the only remedy then available was through the court system."  Ibid. (citing Tumpson, 218 N.J. at 478).  Therefore, under NJCRA, "plaintiffs were entitled to vindicate the right of [initiative petition] by securing a judicial order" certifying the initiative petition and causing it to be placed on the November 3, 2020 ballot.  Ibid. (citing Tumpson, 218 N.J. at 478).

Defendant argues that by law, she was only required to confirm the required number of signatures, whether legal voters had signed it, and whether

there were deficiencies with the petition warranting a refiling and was not obligated to provide legal advice to plaintiffs. The trial court did not find that she failed to give legal advice. Instead, the court found that in August 2020, she denied the petition and stated she would not give the reasons for the deficiencies until after the September Council meeting, when it would be too late to place the question on the ballot. The court found that through this action, defendant deprived plaintiffs of their statutory right to initiative, a violation of the NJCRA.

Defendant argues that N.J.S.A. 40:69A-189 serves as a "stop-gap" measure in the event of deficiency in a petition for any reason, including wrongful advice by a municipal clerk. It permits tolling of time to allow corrections to a petition.

> Upon the filing of a referendum petition with the municipal clerk, the ordinance shall be suspended until ten days following a finding by the municipal clerk that the petition is insufficient or, if an amended petition be filed, until five days thereafter; or, if the petition or amended petition be found to be sufficient, until it be withdrawn by the Committee of the Petitioners or until repeal of the ordinance by vote of the council or approval or disapproval of the ordinance by the voters.
>
> [N.J.S.A. 40:69A-189.]

"Nothing in the statute suggests that the . . . Clerk can refuse to accept the petition for filing." Tumpson, 218 N.J. at 469. Instead, "the filing of the petition

with the Clerk triggers an inquiry into the adequacy of the petition." Ibid. But here, tolling the time to correct the petition would not have helped plaintiffs, because defendant refused to give them the necessary information until it would have been too late to make the corrections.

V.

In her reply brief, defendant argues for the first time that the court should not have awarded attorney's fees. A matter raised for the first time in a reply brief need not be addressed by this court. See Drinker Biddle v. Dep't of Law, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (claims not addressed in merit's brief are deemed abandoned); N.J. Citizens Underwriting Reciprocal Exch. v. Collins, 399 N.J. Super. 40, 50 (App. Div. 2008) (declining to address an argument raised for the first time in reply brief). In addition, as we have already explained, appellate courts generally decline to address arguments not raised in the trial court. Nieder, 62 N.J. at 234; Correa, 458 N.J. Super. at 576 n.2.

Nevertheless, for the sake of completeness, we briefly address this argument. A prevailing party under NJCRA may be awarded of reasonable attorney's fees and costs. N.J.S.A. 10:6-2(f). "Indeed, the attorney's fee provision is one of [NJCRA's] 'most powerful remedies' because it allows average citizens to attract competent counsel to vindicate their substantive

33

A-0080-20

rights when violated by official action." Harz, 234 N.J. at 330 (quoting Tumpson, 218 N.J. at 479-80).

Plaintiffs demonstrated that defendant violated NJCRA. Accordingly, "plaintiffs were the prevailing party, entitling them" to reasonable counsel fees and costs under N.J.S.A. 10:6-2(f). Tumpson, 218 N.J. at 482. Defendant did not challenge the hourly rate charged by plaintiffs' counsel, the number of hours billed, or the costs incurred, in the trial court or in its merits brief in this appeal. Under those circumstances, the attorney's fees and costs awarded to plaintiffs was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION